## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SONYA D. RANSOM,             :

                :

        Plaintiff,         :

                :

v.                   :        C.A. No. 17-939-LPS

                :

NANCY A. BERRYHILL,[1]      :

Acting Commissioner of Social Security,   :

                :

        Defendant.      :

Vanessa L. Kassab, DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Wilmington, DE

    Attorney for Plaintiff.


David C. Weiss, United States Attorney, and Dina White Griffin, Special Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Wilmington, DE.

Of Counsel: Nora Koch, Regional Chief Counsel, Region III, and James McTigue, Assistant Regional Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, PA.

    Attorneys for Defendant.

## MEMORANDUM OPINION


July 30, 2018
Wilmington, Delaware

---

[1]The Court uses the same case caption that the parties have used for their briefing. *See generally* Fed. R. Civ. Proc. 25(d) (permitting substitution of parties).

STARK, U.S. District Judge:

## I. INTRODUCTION

In March and July of 2013, Plaintiff Sonya D. Ransom ("Plaintiff" or "Ransom") filed Title II and Title XVI applications for disability insurance benefits and supplemental security income. (*See* D.I. 8 ("Tr.") at 14) These applications were denied, both upon initial review and upon reconsideration. (*See id.*) On December 9, 2013, Plaintiff filed a request for a hearing with an administrative law judge ("ALJ"), claiming disabilities beginning on August 1, 2012. (*See id.*) At the hearing, the ALJ concluded that Plaintiff did not have impairments that meet the required medical severity under 20 C.F.R. § 404.1520, Plaintiff had the residual functional capacity ("RFC") to perform light work, and Plaintiff was not under a disability as defined by the Social Security Act. (Tr. at 17) Plaintiff's subsequent request for review by the Appeals Council was denied. (Tr. at 1)

On July 12, 2017, Plaintiff brought suit against Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"). Pending before the Court are (I) Plaintiff's Motion for Summary Judgment and (ii) Defendant's Cross-Motion for Summary Judgment. (D.I. 15, D.I. 21) For the reasons set forth below, the Court will deny Plaintiff's motion and grant Defendant's motion.

## II. BACKGROUND

### A. Factual History

Ransom suffers from multiple sclerosis (MS), degenerative disc disease, obesity, and shortness of breath. (Tr. at 16) Plaintiff claims disability based only upon the MS. (Tr. at 209) Ransom was diagnosed with MS on February 8, 2013, based on symptoms that she reported

1

began in August 2012. (Tr. at 247, 209) On April 15, 2013, Plaintiff saw neurologist Dr. Jason Silversteen, who confirmed the MS diagnosis. (Tr. at 260) Dr. Silversteen noted Plaintiff complained of stiffness in her legs, short-term memory issues, significant fatigue, gait difficulties, and balance issues. (Tr. at 267) Yet, Dr. Silversteen's physical and neurologic examination notes state that Plaintiff denied fatigue, her mental status was alert and oriented, her recent memory and attention were normal, and her gait was normal. (Tr. at 268-69)

On May 7, 2013, State agency physician Dr. Michael Borek reviewed Plaintiff's medical records. (Tr. at 85) Dr. Borek found that Plaintiff did have physical limitations, but also that her alleged inability to engage in even sedentary activity was only partially credible given the results of her neurologic exams. (Tr. at 90, 92) Based on Plaintiff's entire medical record, Dr. Borek determined Plaintiff was not disabled. (Tr. at 93) He found Plaintiff had the RFC to perform her past relevant work as a cashier. (*See id.*)

As part of a process of reconsideration, Dr. Vinod Kataria reviewed Plaintiff's medical records. (Tr. at 96) Dr. Kataria also determined that Plaintiff was not disabled. (Tr. at 102-03) However, he found Plaintiff did not have the RFC to perform past relevant work and was only capable of sedentary work. (*See id.*)

During a May 23, 2013 visit, treating physician Dr. Silversteen once again found Plaintiff was alert and oriented; her recent and remote memory, attention, and language were all normal; and her gait was normal. (Tr. at 261) Dr. Silversteen also noted increased deep tendon reflexes in the upper and lower extremities. (*See id.*)

Dr. Silversteen made similar findings in October and November 2013. (Tr. at 403-08) Additionally, while Dr. Silversteen supplied Plaintiff with a prescription for a cane in this time

2

frame, he continued to note that Plaintiff's gait was normal. (Tr. at 404)

Plaintiff's February 10, 2014 visit to Dr. Silversteen resulted in the same findings: Plaintiff's speech was normal, she was alert and oriented to person, place, and time, and her recent and remote memory, attention, language, fund of knowledge, and gait were all normal. (Tr. at 400) He again made a note of increased deep tendon reflexes. (*See id.*) Dr. Silversteen also gave Plaintiff a prescription for a drug to improve her gait. (Tr. at 401)

On February 11, 2014, Dr. Silversteen completed a Multiple Sclerosis Medical Source Statement identifying Plaintiff's symptoms of chronic fatigue, weakness, increased deep reflexes, difficulty remembering, unstable walking, poor coordination, and difficulty solving problems, among others. (Tr. at 282) He stated that due to these symptoms, Plaintiff needed to use a cane and she could not lift or carry any amount of weight. (Tr. at 284) Dr. Silversteen estimated that Plaintiff could use her hands and fingers for about 10% of an 8-hour work day, could sit for ten minutes before needing to get up, and could stand for five minutes before needing to change position. (Tr. at 283-84)

In Plaintiff's subsequent visits with Dr. Silversteen, between May 2014 and July 2015, Dr. Silversteen made the same findings and notes as he had in prior appointments. (Tr. at 396, 391, 386, 382, 377, 374)

**B.     The Administrative Hearing**

On October 28, 2015, an ALJ held a video hearing to determine whether Plaintiff was disabled within the meaning of the Social Security Act. (Tr. at 13) Both Ransom and a vocational expert ("VE"), Marilyn J. Stroud, testified. (Tr. at 65)

### a. Ransom's Testimony

Ransom testified that she lives alone in a handicapped accessible unit (for which she needed to qualify). (Tr. at 36, 53) She reported receiving assistance from family members to complete household activities, such as cleaning the bathroom, washing dishes, and sweeping, but stated that she is able to take care of her own personal hygiene. (Tr. at 60, 62)

Cognitively, Ransom reported symptoms impacting concentration, memory, and awareness. (Tr. at 37-39, 47) She testified about difficulties interpreting and understanding directions. (Tr. at 47) She explained that these difficulties contributed to her current unemployment. (Tr. at 47) Physically, Ransom complained of aches and pains, inability to sit or stand for long periods, and inability to lift heavy equipment. (Tr. at 47) Ransom further testified that she uses a cane for stability and coordination due to weakness and muscle spasms in her legs. (*See* D.I. 50, 52)

### b. VE Testimony

VE Stroud was asked to consider a hypothetical individual of Ransom's age, education, and work experience, who could perform work at a light exertion level. (Tr. at 71) The ALJ stated that such an individual could occasionally perform postural activities, but never climb ladders, ropes, or scaffolds, should avoid even moderate exposure to hazards, and could only perform simple, unskilled work. (Tr. at 71) Based on this information, the VE testified that such an individual could perform two of Ransom's past jobs: benefits clerk and telephone solicitor. (Tr. at 73)

The VE was then asked to consider several other hypotheticals, some in which a cane was used for balance and ambulation, and some in which frequent grasping would be required. (Tr. at

75) The VE testified that the positions of benefit clerk and telephone solicitor would still be available to such an individual. (Tr. at 75) These positions would be unavailable only if the individual also had to take unscheduled breaks every 15 minutes throughout the day, was incapable of occasional fingering and grasping, and used a cane for balance. (Tr. at 77)

## C.  The ALJ's Findings

On December 24, 2015, the ALJ issued the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since August 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: multiple sclerosis, degenerative disc disease, obesity, and shortness of breath (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must be able to alternate between sitting and standing every 20 minutes. The claimant can frequently push/pull with bilateral lower extremities. She can occasionally perform postural maneuvers; however, she can never climb ladders, ropes, and scaffolds. The claimant can frequently finger and grasp bilaterally. She can tolerate occasional exposure to extreme temperatures and hazards, such as unprotected heights and moving machinery. The claimant can tolerate occasional exposure to atmospheric irritants, such as dust, odors, fumes, and gases. She also needs a cane for balance and ambulation.

6.      The claimant is capable of performing past relevant work as a benefits clerk, II and customer service representative/telephone solicitor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. at 15-23)

## III.    LEGAL STANDARDS

### A.     Motion for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party,

6

and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating

party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (internal quotation marks

omitted). The "mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment;" a factual dispute is genuine

only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50

(internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating

entry of summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in

support of the nonmoving party's position is insufficient to defeat a motion for summary

judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving

party. *Anderson*, 477 U.S. at 252.

The same standard applies to cross-motions for summary judgment. *See Appelmans v.*

*City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). "The filing of cross-motions for summary

judgment does not require the court to grant summary judgment for either party." *Bentzen v.*

*Astrue*, 46 F. Supp. 3d 489, 498 (D. Del. 2014) (internal quotation marks omitted).

**B.      Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by

"substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v.*

*Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" may be satisfied by less

than a preponderance of the evidence but requires more than a mere scintilla of evidence. *See*

*Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court

has noted, substantial evidence "does not mean a large or significant amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the

Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh

the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the

evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95

(3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the

Appeals Council or the District Court as a basis for remanding the matter to the Commissioner

for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239

F.3d at 592. "Credibility determinations are the province of the ALJ and only should be

disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp.

2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the

substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## C. Disability Determination Process

The Social Security Act provides for the payment of disability benefits to indigent persons under the Social Security Income ("SSI") program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI (and for purposes of disability insurance benefits) as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel,* 186 F.3d

9

422, 427-28 (3d Cir. 1999). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I) (mandating finding of nondisability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (mandating finding of nondisability when claimant's impairments are not severe), 416.920(a)(4)(ii). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which [the] individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir.

10

2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of nondisability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

## IV.    DISCUSSION

### A.    The ALJ's Finding as to Plaintiff's RFC

The parties have filed cross-motions for summary judgment on the issue of whether the ALJ's findings regarding Ransom's RFC were supported by substantial evidence. (*See* D.I. 15, 21) Plaintiff contends that they were not, while the Commissioner takes the opposite position.

A claimant's RFC is the most a person can do despite his or her impairments. 20 C.F.R. § 404.1545(a). This assessment is based on all of the relevant evidence in the case record. *See id.* In Plaintiff's view, the ALJ improperly characterized the medical evidence, failed to consider all of the relevant limitations in the record, and, thus, erred in finding Plaintiff could perform

11

light work activities. (*See* D.I. 17 at 16)

Light work is defined (in part) as:

> lifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds . . . [A] job is in this
> category when it requires a good deal of walking or standing . . . .
> Relatively few unskilled light jobs are performed in a seated
> position.

SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

In arguing against the RFC found by the ALJ, Ransom points to medical impairments noted by Dr. Silversteen, such as chronic fatigue, balance problems, increased deep tendon reflexes, difficulty with memory, instability while walking, poor coordination, and difficulty solving problems.[2] (Tr. at 282) Additionally, although Dr. Kataria did not find Plaintiff to be disabled, he did state that Plaintiff did not have the RFC to perform light work, but only for sedentary work. (Tr. at 110) This is in conflict with Dr. Borek's finding that Plaintiff did have the RFC to perform the light work. (Tr. at 93) Plaintiff also argues that while she lives independently, she accomplishes tasks only with outside assistance or in a great amount of pain. (*See* D.I. 17 at 12) (citing *Bentzen*, 46 F. Supp. 3d at 498)

Defendant counters that Plaintiff's medical history often contradicts her claimed impairments. (*See* D.I. 22 at 15) Defendant cites Dr. Silversteen's frequent inconsistent medical findings. (Tr. at 268, 284) Additionally, Defendant argues that Dr. Silversteen's neurologic examination notes state Plaintiff's speech, comprehension, memory, and gait were all normal. (*See* D.I. 22 at 7) Defendant also points to Plaintiff's independent living situation, as Plaintiff prepares meals, vacuums, and does laundry. (Tr. at 217)

---

[2]The issue of whether Dr. Silversteen's medical opinions were accorded enough weight by the ALJ is addressed in the next section.

The Court agrees with Defendant that there is substantial evidence to support the ALJ's findings on Plaintiff's RFC. Substantial evidence does not need to be a large amount of evidence, but may be simply enough relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *See Pierce*, 497 U.S. at 565.

Dr. Borek determined that Plaintiff had the capacity for light work. (Tr. at 93) The opinions of State agency medical physicians "can be given weight only insofar as they are supported by evidence," including "the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical . . . consultant or other program physician." S.S.R. 96–6p, 1996 WL 374180, at *2 (July 2, 1996). Substantial evidence (as cited throughout this Opinion) – including Dr. Silversteen's repeated findings upon examination of Plaintiff – are consistent with the RFC found by Dr. Borek. While Dr. Kataria found that Plaintiff had the RFC only for sedentary (and not also light) work, Dr. Kataria also concluded that Plaintiff was not disabled (Tr. at 109, 111), so Dr. Borek's opinion is not so inconsistent with the overall record as to fail to be supported by substantial evidence.

Accordingly, Plaintiff's first issue on appeal does not provide a meritorious basis for granting her motion or for denying the Commissioner's motion.

**B.      The ALJ's Decision as to the Weight to Give Dr. Silversteen's Opinions**

The parties seek summary judgment on the issue of whether the ALJ's analysis of Dr. Silversteen's medical opinions was supported by substantial evidence. (*See* D.I. 15, 21)

Plaintiff contends that the Commissioner erred in not according adequate weight to Dr. Silversteen's opinions, as required by Social Security Ruling 96-5p, which provides: "[O]pinions

from any medical source on issues reserved to the Commissioner must never be ignored." (D.I. 17 at 22 (citing SSR 96-5p, 1996 WL 374183 (July 2, 1996))) In support, Plaintiff cites 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), which states:

> If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

Defendant responds that Dr. Silversteen's opinions were entitled to "little weight" (as the ALJ found (Tr. 21-22)) because they were unsupported by, and are instead inconsistent with, substantial evidence in the record. (*See* D.I. 22) Defendant notes numerous instances in which objective testing conflicts with Dr. Silversteen's statements. (*See* D.I. 22 at 14) Additionally, Defendant contends Plaintiff's neurologic exams were largely normal, thereby failing to support Dr. Silversteen's opinion that Plaintiff is incapable of performing any work. (*See id.*)

It is not for the Court to re-weigh the medical opinions in the record. *See Gonzalez*, 537 F. Supp. 2d at 659. Rather, the Court must determine whether substantial evidence exists to support the ALJ's weighing of those opinions. *See id.* Here, the ALJ considered all relevant factors in determining how much weight to accord Dr. Silversteen's opinion, and identified inconsistencies between Dr. Silversteen's opinion and his treatment notes. (Tr. at 22)

For example, during an August 7, 2014 office visit, Dr. Silversteen noted that Plaintiff had gait difficulties. (Tr. at 389) Yet, during that same visit, Dr. Silversteen observed in his detailed neurologic exam that Plaintiff's gait was normal. (Tr. at 391) Similar discrepancies appear throughout Dr. Silversteen's records. (*See, e.g.,* Tr. at 381, 383) (noting Plaintiff's leg was dragging, but also writing Plaintiff's gait was normal and she had full strength in limbs)

14

Substantial evidence supports the ALJ's finding that Dr. Silversteen's medical opinions were inconsistent with his treatment notes and conflicted with two State agency physicians' findings. Thus, substantial evidence supports the ALJ's decision not to accord controlling or even substantial weight to his opinion even though he is a treating source. *Bentzen*, 46 F. Supp. 3d at 501.

Accordingly, Plaintiff's second issue on appeal does not provide a meritorious basis for granting her motion or for denying the Commissioner's motion.

## V.    CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion for Summary Judgment. The Court will grant Defendant's Cross-Motion for Summary Judgment. An appropriate Order follows.